ELIJAH T. HOPKINS, Respondent, v. DAVID CROMWELL, Substituted in the Place of PETER MULLER, Deceased, as Assignee of F. FOEHRENBACH COMPANY, for the Benefit of Its Creditors, Appellant.

*The employee of a corporation, entitled to preference in payment under a general assignment, defined — the duties, not the title of the position, determine the question.*

A corporation engaged in the wholesale pickle business in the city of New York had an arrangement with a man named Hopkins, who lived at White Plains, under which the corporation would name to Hopkins the price which it would pay for pickles to the farmers living in the vicinity of White Plains, and Hopkins would call upon the farmers and contract with them in the name of the corporation for the pickles.

Hopkins received the pickles at the factory, sorted them, weighed them, prepared the brine and changed it when necessary and inspected the stock. He also transferred the pickles from the ordinary barrels to new barrels and shipped them as often as ordered by his principal.

For a few weeks during the spring the corporation would send up coopers to cooper the barrels and occasionally Hopkins would call in a man and wagon for two or three hours. The only other assistance which Hopkins received was that rendered by a lad and his own man-of-all-work. Hopkins' compensation was twenty cents for each hundred pounds of pickles purchased from the farmers when delivered on the cars.

*Held,* that Hopkins was an employee of the corporation within the purview of section 29 of chapter 466 of the Laws of 1877, as amended by chapter 624 of the Laws of 1897, which provides, "In all distribution of assets, under all assignments made in pursuance of this act, the wages or salaries actually owing to the employees of the assignor or assignors at the time of the execution of the assignment for services rendered within one year prior to the execution of such assignment, shall be preferred before any other debt, and should the assets of the assignor or assignors not be sufficient to pay in full all the claims preferred pursuant to this section, they shall be applied to the payment of the same, *pro rata* to the amount of each such claim;"

That the fact that the corporation styled Hopkins its "superintendent," or its "superintendent at White Plains," was immaterial, as a position is not classified by its title, but by the duties incident to it.

APPEAL by the defendant, David Cromwell, substituted in the place of Peter Muller, deceased, as assignee of F. Foehrenbach Company, for the benefit of its creditors, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 17th day of November, 1899, upon the decision of the court rendered after a trial at the Kings County Special Term.

*Francis C. Cantine,* for the appellant.

*Wilson Brown, Jr.,* for the respondent.

PER CURIAM:

At the trial there appeared to be no dispute as to the worth of the services rendered within a year prior to the assignment for the benefit of creditors, and for that reason the opinion of Mr. Justice JENKS at Special Term does not discuss that branch of the case. The question which he treated in his exhaustive opinion we believe properly decided by the learned justice at Special Term, and we adopt the opinion delivered below on that branch of the case.*

---

* The following is the opinion of Mr. Justice JENKS, delivered at Special Term:

JENKS, J.:

The issue arises upon the application of section 29, chapter 624, Laws of 1897, as amended,† which provides:

"In all distribution of assets, under all assignments made in pursuance of this act, the wages or salaries actually owing to the employes of the assignor or assignors at the time of the execution of the assignment for services rendered within one year prior to the execution of such assignment, shall be preferred before any

---

† See Laws of 1877, chap. 466, § 29, as amd. by Laws of 1897, chap. 624.—[REP.

The appellant urges here that upon the plaintiff's own showing part of the services rendered to the defendant's assignor were performed prior to one year before the date of the assignment, in that some of the cucumbers of the crop of 1896 were bought and cured by him prior to the 25th of April, 1897, although shipped there-

---

other debt and should the assets of the assignor or assignors not be sufficient to pay in full all the claims preferred pursuant to this section, they shall be applied to the payment of the same, pro rata to the amount of each such claim."

There is no dispute as to the services rendered within the prescribed period or as to their worth, but the question is whether the plaintiff was an employee entitled to wages or salary, and, therefore, to a preference afforded by the statute.

This and similar legislation is the protection of those who serve in more subordinate and humble capacities and who naturally would suffer if their compensation was not surely and speedily paid. (*Bristor* v. *Smith*, 158 N. Y. 157.)

To this end the statute has preferred those who depend upon their daily work for the means of life, to the dealers or independent contractors who take the chances of trade, or who extend credit in the ordinary risks of business, to the professional man, or to the high official of the corporation; in fine, to those who have, presumably, other means of subsistence or capital or can protect themselves, or who in any event are not naturally dependent upon the solvency of one individual. While the word "employee" is not to be read with full generic force (*Palmer* v. *Van Santvoord*, 153 N. Y. 612), it has been adjudicated to embrace more than the words "operative or laborer."

In *Matter of American Lace Works* (30 App. Div. 323) WILLARD BARTLETT, J., says: "It may be said generally that the term 'employees' includes persons employed by a corporation in comparatively subordinate positions who cannot correctly be described either as operatives or laborers."

In *Bristor* v. *Smith* (*supra*) GRAY, J., discussing the scope of the term as used in section 54, chapter 688, Laws of 1892, says that the word defines "in a general way such classes of persons as were engaged in serving the corporation in subordinate capacities."

In *Palmer* v. *Van Santvoord* (*supra*), in the course of a discussion of the term, ANDREWS, Ch. J., says that it must be recognized as "including in the designation all who in common understanding held that relation to the corporation." (See, too, *People* v. *Beveridge Brewing Company*, 91 Hun, 315.)

I am of opinion that plaintiff was an employee within the purview of this statute. The assignor of the defendant was a corporation engaged in the wholesale pickle business in the city of New York. The plaintiff lived at White Plains. The corporation would name to him a price which it would pay for pickles to the farmers in the vicinity of White Plains, and the plaintiff would call upon those farmers and contract with them, but in the name of the corporation, for the pickles. In due course, from time to time, the plaintiff received the pickles at the factory and then sorted them, weighed them, prepared the brine, changed it as necessary, and inspected the stock. He then changed the pickles

after. Called in rebuttal and cross-examined by the defendant, the plaintiff testified, however, that "Twenty-six car loads of pickles were *bought*, cured, made and shipped between April 25, 1897, and April 25, 1898," the date of the assignment. Elsewhere in the evidence he said that the cars averaged ninety barrels to the car, and three hundred and fifty pounds to the barrel; at twenty cents per hundred pounds, for his work and services in connection with these twenty-six carloads, he appears to be entitled for "services

from the ordinary barrels to new barrels and shipped them as often as ordered by his principal. This work represented the manual labor of the plaintiff, who was employed thereon every day, and often upon Sundays. He had none under him, save that the corporation sent up some coopers, for three or four weeks in the spring, to cooper the barrels, save that sometimes when the shipments were unusual he called in his own man of all work, who worked for him the year round, at his own house, and save that sometimes on Saturdays a lad assisted him in running the brine, and save occasionally he was compelled to call in a man and wagon for two or three hours.

Stress is laid upon the fact that the corporation dubbed the plaintiff its "superintendent" or its "superintendent at White Plains." A position is not classified by its title, but by the duties incident to it. Nomenclature cannot alter the facts that here was a subordinate engaged in daily manual labor, who superintended nothing more than to see that his own work was properly done and that the orders of his superiors were obeyed by himself. The plaintiff had no concern with the corporation or its financial business, its policy or its management; even the farmers who supplied the pickles under the contracts with the corporation were paid at the office of that corporation in the city of New York.

The relation of the plaintiff to the defendant's assignor brings him within the preferred class of employees, as that term is interpreted in *Palmer* v. *Van Santvoord,* and the other authorities, *supra.* There was no feature of the services that placed the plaintiff in the plane of the attorney in *Bristor* v. *Smith (supra)*, or of the superintendent in *People* v. *Remington* (45 Hun, 329), or of the occasional drawman in *Matter of Kimberly* (37 App. Div. 106).

While such services should not be classified with those of subordinates considered in *Matter of Stryker* (158 N. Y. 526) it is to be noted that the *Stryker* case (like several others somewhat *contra*) construes an act of more restricted phrase, in that the apt words there are "wages" and not "wages or salaries," while the subjects of the statute are designated as "operatives and laborers" and not "employees."

The compensation of the plaintiff was twenty cents for every hundred pounds of pickles purchased from the farmers, when delivered on the cars, which was to become due when the pickles were so delivered; that is, after the plaintiff had expended his labor as indicated above upon them, and when they were shipped to his principal.

rendered within one year prior to the execution of such assignment" (Laws of 1877, chap. 466, § 29, as amd. by Laws of 1897, chap. 624) to the full sum demanded, after deducting the payments made to him by defendant's assignor.

The judgment should be affirmed, with costs.

Present — BARTLETT, WOODWARD, HIRSCHBERG and HOOKER, JJ.

Judgment affirmed, with costs.

Broadly, the word "salary" means a recompense or consideration made to a person for his pains or industry in another man's business. Jacob, quoted in Abbott's Law Dictionary. Whether it be derived from "salarium," or more fancifully from "sal," the pay of the Roman soldier, it carries with it the fundamental idea of compensation for services rendered. Indeed, there is eminent authority for holding that the words "wages" and "salary" are in essence synonymous.

In *Commonwealth ex rel. Wolfe* v. *Butler* (99 Penn. St. 542) SHARSWOOD, Ch. J., says: "According to the most approved lexicographers, the words 'wages' and 'salary' are synonymous. They both mean one and the same thing: 'a sum of money periodically paid for services rendered.' * * * The truth is, and this the lexicographers seem to hold, that if there is any difference in the popular sense between 'salary' and 'wages' it is only in the application of them to more or less honorable services. * * * A merchant pays wages to his servant who sweeps the floor, makes the fire, and runs his errands, but he compensates his salesman or clerk by a salary. How can it make any difference in what way the compensation is ascertained?"

In *South & North Alabama Railroad Company* v. *Falkner* (49 Ala. 115) B. F. SAFFOLD, J., says: "The term 'wages' indicates inconsiderable pay without excluding 'salary,' — which is suggestive of larger compensation for personal services. But its application to laborers and employees certainly conveys the idea of a subordinate occupation which is not very remunerative."

I think the Legislature employed the words "wages or salaries" while practically equipollent, for the purpose of fully describing the compensation which is to be paid to employees, inasmuch as that term, while embracing operative or laborer, means something more. The final question in every case is whether the subordinate, tested by the character of his services, and the nature of his relation, is an employee within the protection of the statute, whose compensation may be fairly said to be wages or salary, within the accepted scope of these terms; and the fact that the compensation in this case was practically paid for piece work, that is, for pickles after they were sorted, properly treated and forwarded for the principal as the result of plaintiff's manual labor, should not exclude the plaintiff from the benefits of this statute. (*Matter of Luxton & Black Co.*, 35 App. Div. 243.)

Judgment for plaintiff, with costs.