H. N. HOWE et al., v. KAUCHER-HODGES & CO. et al.

Western Section. November 28, 1930.

Petition for Certiorari denied by Supreme Court, May 14, 1931.

H. H. Barker, of Memphis, for appellant.

Albert F. Johns and W. M. & W. G. Hall, all of Memphis, for appellee.

SENTER, J. In this cause the complainants by the original bill sought to recover the sum of $3550 alleged to be due for services rendered as sub-contractors under the general contractor, the defendant, Kaucher-Hodges & Co., and to have a lien declared and enforced against the Physicians and Surgeons Annex to the Baptist Memorial Hospital situated in the city of Memphis. It is shown by the pleadings that the firm of Kaucher-Hodges & Co. was the general contractor for the erection of said annex to the Baptist Memorial Hospital; said firm was composed of George T. Kaucher and E. G. Hodges; and that said firm and the two individual members thereof had filed voluntary petitions in bankruptcy, and the defendant, F. M. Robertson, had been duly appointed trustee in said bankruptcy proceedings.

The answers of George C. Kaucher and E. G. Hodges admit that the amount sued for was justly due and owing by them to complainant; that complainant was the sub-contractor employed by said Kaucher-Hodges Co. to prepare the drawings for the structural steel work for the building and to superintend the placing of the steel in the building and also to superintend the mixing and pouring of the concrete used in the building. The answers of these two defendants and also that of the Trustee in Bankruptcy set up the bankruptcy proceedings and alleged that any judgment that should be rendered against the respective bankrupts in this suit should not be enforced by executions pending a final discharge, and alleging that this debt has been listed among the debts of the respective bankrupts.

The defendant, the Baptist Memorial Hospital, denied liability and denied that the complainant was entitled to a lien on the building for the alleged services rendered, and denied that the services rendered were of the kind and character that entitled them to a lien under the statute.

At the hearing of the cause the Chancellor decreed a judgment in favor of complainant and against the general contractor, but enjoined perpetually the issuance of an execution, but held that the complainant was not entitled to the benefits of the lien statute in force in this State, and that complainants did not come within the purview of the Mechanic's Lien Laws in force in this State, and dismissed the bill as to the Baptist Memorial Hospital at the cost of complainants.

From so much of the decree as denied to complainants a lien on the property, and holding that complainants were not entitled to

a lien on the real estate improved, and in taxing complainants with the cost of the cause, the complainants have appealed to this court, and have assigned the following two errors:

"I. The Chancellor erred in holding that Gardner and Howe are not entitled to a lien upon the property of the Baptist Memorial Hospital to secure the payment of the amount he found to be due to them for work done by them as sub-contractors in the erection of the improvements on said Baptist Memorial Hospital's property.

"II. The Chancellor erred in holding that he was bound to deny Gardner and Howe their claimed lien and dismissed their bill on the authority of the three Tennessee cases cited in his opinion."

There is no material conflict as to the facts. Only one deposition was taken in the case, that of H. N. Howe, who testified that his firm, operating under the firm name of Gardner & Howe, became the sub-contractors under the general contractor, Kaucher-Hodges Co., to do the structual engineering and preparing working drawings and shop drawings for the steel work to be done on the building, and also to superintend the mixing and pouring the concrete used in the building, and for which service they would receive under their contract with the general contractor the sum of $3800, and that only $250 of the contract price has been paid to them by the general contractor, leaving the balance, $3550, unpaid. By stipulation contained in the record it appears that the work was completed on November 28, 1927, and that the statutory notice as required by the statute was given to the Baptist Memorial Hospital on December 24, 1927. It further appears that the suit was instituted within ninety days, and before the expiration of the statutory lien period.

The only question involved on this appeal is as to whether the services rendered by the complainants in making the drawings for the steel work and superintending the placing of the steel, and in superintending the mixing of the concrete materials, brings the complainants within the provisions of the statute as lienors.

Appellant cites numerous authorities from other states, holding that an architect who furnishes plans and specifications for a building and supervises its construction is entitled to a lien on the building under statutes similar in language to that of this State, and especially the annotations to the case of Stephens v. Hicks, 156 N. C., L. R. A. (N. S.), Vol. 36, p. 354, and also the annotations in 16 L. R. A., 600, and numerous other authorities from other states, and text writers in support of the contention that such work or services as complainants rendered in the present suit are covered by the language of the statute, and under these authorities would include the complainants as lienors.

Appellant, in the excellent brief filed, undertakes to distinguish the Tennessee case of Thompson v. Baxter, 92 Tenn., 304, from the

present case. In the Baxter case, by a majority opinion, the court held that an architect who designed the building and supervised its construction did not come within the terms of the lien laws of this State so as to entitle him to a lien on the property for this character of service. In a strong dissenting opinion, Judge Lurton disagreed with the majority holding. In the dissenting opinion, Judge Lurton stated that: "The architect employed to draw plans, and supervise the erection of the building, is a person doing 'a part of the work,' just as clearly as the laborer whom he supervises. The proof shows that Thompson personally by day and by night, supervised this work and 1 think him within the statute."

However, the majority of the court held otherwise. In the body of the majority opinion the court after quoting the several sections of the statute, states:

"However, the law is strict in its requirements that the claimant shall make it clearly appear that he has a lien; but when that appears, the remedial laws for its enforcement are to be liberally construed. . . .

"This lien is purely statutory, and unknown to the common law. Only those enumerated and embraced in the statute are entitled to the lien. A liberal construction of the mechanic's lien law does not mean that they shall be liberally construed in embracing or including others than those enumerated in the statutes. . . . No one is entitled to the lien unless the statute includes him or them. They are not to be included by strained construction. Unless the statute gives the lien the party has none.

"Now, does the statute embrace, include, or give this lien to a supervising architect? Is he a mechanic, undertaker, founder, machinist or contractor? Has he done any work in building the house? Has he furnished the material or any part thereof, or has he put in any fixtures, machinery or material, either of wood or metal? We think not. A supervising architect is not a mechanic nor is he a contractor in the sense of the statute. He simply draws plans, makes estimates, solicits bids, and supervises the erection of the building. The statute clearly does not embrace or include supervising architects. It makes no provisions for him, it does not give him this lien and hence the courts cannot."

Learned counsel for appellants argue that even if the case of Thompson v. Baxter, supra, is to be followed by this court, that the services rendered by the complainants in the present case are to be distinguished from that of an architect, in that, the work of the architect is a preliminary undertaking, and that the owner of the property may not build the house at all or use the plans and drawings of the architect, and that the drawings and plans and

specifications prepared by the architect precedes any actual construction, while the work rendered by the complainants is work that essentially goes into the building, and is a service rendered after the contract is let. However, appellant overlooks that portion of the opinion in the Thompson case with reference to supervising the construction by the architect, which was work done during the erection of the building as pointed out by the dissenting opinion. In the case of Harris v. Marable, 138 Tenn., 676, it was held that one who merely supervised the work of laborers for the contractor is not entitled to a lien on the premises, citing and construing Sec. 3540, Shannon's Code. In the body of the opinion by Mr. Justice Williams is quoted the language of Judge Lurton in his dissenting opinion, in Thompson v. Baxter, wherein Judge Lurton states:

> "The 'boss' or 'foreman,' under a contractor, or sub-contractor, whose business it was to oversee and direct the labor of others, would be secured as a person 'employed by such contractor,' etc., and entitled to the benefit of the lien just as much as a carpenter, bricklayer, or hod-carrier, though he did not personally do any of these things."

The opinion in Harris v. Marable then adds; that the decided weight of authority is to the effect that such a superintendent is not "employed to work on the building" so as to come within the protection of such a statute, and cites among other authorities in support, 18 R. C. L., 912, par. 41, and notes to Ann. Cas. 1913R, 272, Ann. Cas. 1913B, 137.

In Southern Const. Co. v. Halliburton, 149 Tenn., 331, in disposing of the claim of one Massingill, who was a foreman of construction work, under a sub-contractor on roadwork, and who was claiming against the bonding company under the provisions of the Act of 1917, the court states that the language of the Act of 1917 (pertaining to highway .construction) and of the mechanic's lien statutes are quite similar, and holds that such a foreman could not claim under the mechanic's lien statutes, and the language being similar he could not therefore claim under Sec. 6 of Chap. 74 of the Acts of 1917 (the highway law) which provides that the contractor and his surety shall be liable to "all laborers and other employees working for him, his sub-contractors or his agents." The court then proceeds to state:

> "We cannot see that the class of persons protected is broader under one statute than under the other. Both statutes were designed for protection of the same class of persons. Liens were given under private contracts; recourse on a bond was given under public contracts. Decisions, therefore, as to what persons are within the scope of one statute are quite authoritative as to what persons should be included within the statute."

In that case the court further said:

"It does not appear from the proof that Massingill did the work of a laborer. According to his own testimony he did the work of superintendents. There should be uniformity of decision in these matters, and, under the authority of Harris v. Marable we think the Court of Civil Appeals erred in holding the general contractor and its surety liable for Massingill's claim, and the decree of that court in this particular will be reversed."

We are of the opinion that these cases, Thompson v. Baxter, supra, Harris v. Marable, supra, and Southern Const. Co. v. Halliburton, supra, have settled the questions here made against the contention of appellants. It results that we find no error in the decree of the Chancellor, and it is accordingly affirmed. Appellants and sureties on the appeal bond will pay the cost of this appeal.

Heiskell, J., and Steele, Sp. J., concur.